IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PLEASANT GROVE DEVELOPMENT PARTNERS, LLC, a Utah limited liability company, CLARK CHAMBERLAIN, an individual, and DOUGLAS CHAMBERLAIN, an individual,<br><br>       Plaintiffs,<br><br>       vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for AMERICA WEST BANK, L.C., BENTLEY WILSON, an individual, FIRST PRIORITY CAPITAL GROUP, LLC, a Utah limited liability company, and DOES I-X, whose true names are unknown,<br><br>       Defendants. | MEMORANDUM DECISION AND ORDER GRANTING FDIC-R'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br>Case No. 2:09-CV-959 TS |

This matter is before the Court on a Motion for Summary Judgment filed by

Defendant/Counterclaim Plaintiff Federal Deposit Insurance Corporation, as receiver ("FDIC-R")

for America West Bank, L.C. ("America West"). For the reasons discussed below, the Court will

grant the Motion.

## I. FACTUAL BACKGROUND

On November 26, 2007, America West issued a letter to Pleasant Grove Development

Partners ("Pleasant Grove") wherein America West stated that it had an "intent, but not a

commitment to make a loan" in the principal amount of $5,200,000 to Pleasant Grove (the

"Letter of Intent").[1]

On December 26, 2007, America West issued a Loan Commitment and Term Sheet to

Pleasant Grove, which provided for a loan of $3,200,000 to Pleasant Grove.[2] The Term Sheet

provided that additional disbursements not to exceed $2,000,000 would become available

following the sale of two commercial lots: lots five and six. It is undisputed that those lots were

never sold.

On January 10, 2008, the America West loan to Pleasant Grove closed for the principal

amount of $3,200,000 (the "Loan"). As part of the Loan, Pleasant Grove executed and delivered

a Commercial Promissory Note (the "Note") in the original principal amount of $3,200,000.[3]

Plaintiffs have presented evidence that they sought $5,200,000 to acquire and build on

certain property. Plaintiffs represent that the entire amount was required to complete this project.

Plaintiffs indicate that there were certain representations made by America West that the

remaining $2,000,000 would be funded at a later time. These alleged representations make up

Plaintiffs' claims in this action.

---

[1]Docket No. 33, Ex. A.

[2]*Id.*, Ex. B.

[3]Docket No. 16, Ex. A.

On December 22, 2008, Pleasant Grove and America West executed a Change in Terms Agreement. That Agreement provided:

a. "DESCRIPTION OF EXISTING INDEBTEDNESS. A Promissory Note dated January 10, 2008. Executed by Pleasant Grove Development Partners in the amount of $3,200,000.00 in favor of America West Bank."

b. Some changes were made to the maturity dates, payment allocations, guarantors, interest rates, amounts provided by Pleasant Grove, and interest deferrals, but "[a]ll other terms and conditions remain the same."

c. "CONTINUING VALIDITY. Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. . . ."

d. "FINAL AGREEMENT. Borrower understands that this Agreement and the related loan documents are the final expression of the agreement between Lender and Borrower and may not be contradicted by evidence of any alleged oral agreement."[4]

Plaintiffs received a Notice of Foreclosure dated April 20, 2009, informing them that America West had filed a Notice of Default on the Property on April 9, 2009. On May 1, 2009, the Utah Department of Financial Institutions closed America West and the FDIC-R was named receiver. Plaintiffs filed their original Complaint in this action on July 21, 2010. On July 23, 2010, Plaintiffs filed their Amended Complaint against the FDIC-R and others.

---

[4]*Id.*, Ex. C.

Plaintiffs' Amended Complaint alleges the following causes of action against Defendant FDIC-R: Fraudulent Misrepresentation; Negligent Misrepresentation; Fraud and Self Dealing; Fraud in the Factum; Tortious Interference with Prospective Business; Interference with Economic Advantage; Breach of Contract and Unconscionability; Declaratory Judgment; Breach of Implied Covenant of Good Faith and Fair Dealing; Breach of Fiduciary Duty; Unjust Enrichment; Equitable Lien; Constructive Trust; Punitive Damages; and Attorneys' Fees. Plaintiffs have since withdrawn their claim for Fraud in the Factum.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law.[5] In considering whether a genuine issue of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[6] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[7] Both movants and nonmovants of summary judgment motions must support their assertions by "citing to particular parts of materials in the record" or "showing that the

---

[5] FED. R. CIV. P. 56(a).

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[7] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact."[8]

### III.  DISCUSSION

A.      *D'OENCH* DOCTRINE

FDIC-R argues that Plaintiffs' claims fail under the *D'Oench*[9] doctrine and the

codification of that doctrine, 12 U.S.C. § 1823(e).  "The federal common law *D'Oench* doctrine

. . . prohibits claims based upon agreements which are not properly reflected in the official books

or records of a failed bank or thrift."[10]  "The purpose of the *D'Oench* doctrine is to permit

regulators to accurately appraise the assets of savings institutions by allowing the regulators to

rely on the assets' face value."[11]  "As the doctrine has evolved, its focus has shifted from the

fraudulent, illegal, or secret character of the debtor's acts to the effect the acts have on the

regulatory agency's ability to evaluate quickly and accurately a savings institution's assets."[12]

"The design of the *D'Oench* doctrine thus 'favors the interests of depositors and creditors of a

failed bank, who cannot protect themselves from secret agreements, over the interests of

---

[8]FED. R. CIV. P. 56(c)(1).

[9]*D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942).

[10]*FDIC v. Noel*, 177 F.3d 911, 917 (10th Cir. 1999) (quotation marks and citation omitted).

[11]*Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1577 (10th Cir. 1993).

[12]*Id*. at 1576.

borrowers, who can.'"[13]  The *D'Oench* doctrine "has been held applicable to virtually any claim

or defense that has the effect of adversely impacting the value of assets held by a federal banking

regulator as a consequence of liquidation or receivership of a failed institution."[14]

> The *D'Oench* doctrine is now codified at 12 U.S.C. § 1823(e).  Section 1823(e) provides:
>
> No agreement which tends to diminish or defeat the interest of the Corporation in
> any asset acquired by it under this section or section 1821 of this title, either as
> security for a loan or by purchase or as receiver of any insured depository
> institution, shall be valid against the Corporation unless such agreement—
> (A) is in writing,
> (B) was executed by the depository institution and any person claiming an adverse
> interest thereunder, including the obligor, contemporaneously with the acquisition
> of the asset by the depository institution,
> (C) was approved by the board of directors of the depository institution or its loan
> committee, which approval shall be reflected in the minutes of said board or
> committee, and
> (D) has been, continuously, from the time of its execution, an official record of the
> depository institution.

The requirements of Section 1823(e) are certain and categorical.[15]

> In its Motion for Summary Judgment, FDIC-R argues that each of Plaintiffs' claims are

based upon and dependent upon the existence of certain alleged representations, are dependent

upon the successful proof of some or all of the remaining claims, or are otherwise based upon

and dependent upon the existence of the alleged representations.  Therefore, FDIC-R argues that

Plaintiffs' claims are barred by the *D'Oench* doctrine and Section 1823(e).

---

[13]*Noel*, 177 F.3d at 917 (quoting *Bell & Murphy Assocs., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 754 (5th Cir. 1990)).

[14]*Nat'l Credit Union Admin. Bd. v. Keeling*, 1996 WL 331091, at *3 (E.D.N.Y. May 31, 1996).

[15]*Langley v. FDIC*, 484 U.S. 86, 95 (1987); *see also FDIC v. Oldenburg*, 34 F.3d 1529, 1550 (10th Cir. 1994) (describing Section 1823(e)'s requirements as "strict and categorical").

In response to FDIC-R's Motion, Plaintiffs have abandoned their Fourth Cause of Action for fraud in the factum. Plaintiffs have also clarified that they do not argue that the alleged representations alone constitute agreements that are enforceable against FDIC-R. Rather, Plaintiffs argue that certain loan documents infer a bilateral agreement and that the alleged representations are admissible as parol evidence to interpret the loan documents. However, the Court finds that even considering these clarifications, Plaintiffs' claims still fail.

As stated, Plaintiffs argue that *D'Oench* does not bar their claims, pointing to various loan documents to argue that Plaintiffs and America West entered into a bilateral agreement whereby America West agreed to loan the additional $2,000,000. Only two of the documents relied upon by Plaintiffs meet the requirements of Section 1823(e): the Letter of Intent and the Loan Commitment. The Letter of Intent does state that America West intended to loan $5,200,000.[16] However, the Letter of Intent made clear that America West had the "intent, but not a commitment" to make the loan.[17] The Letter of Intent was followed by the Loan Commitment which clearly stated that only $3,200,000 was to be loaned.[18] The Loan Commitment provided that additional disbursements would only be made if the proceeds from the sale of lots five and six were deposited with the bank, which did not occur.[19] Because these

---

[16]Docket No. 33, Ex. A.

[17]*Id.*

[18]*Id.*, Ex. B.

[19]*Id.*

documents do not meet the strict categorical requirements of Section 1823(e), they do not support Plaintiffs' claims.

Plaintiffs also argue that a bilateral agreement can be inferred from the various loan documents. However, the Tenth Circuit has held that "suggestive evidence does not amount to a valid written agreement itself."[20] "It is the actual, written agreement which the law requires to be an official record of the depository institution."[21] "Scattered evidence in corporate records from which one could infer the existence of an agreement does not meet the requirements of the statute."[22]

As set forth above, the majority of the documents relied upon by Plaintiffs do not meet the requirements of Section 1823(e) and those that do meet the requirements of Section 1823(e) fail to show an intent to loan the additional $2,000,000. Plaintiffs' reliance on scattered records to support its claim of the existence of an agreement to loan the additional funds does not meet the requirements of the statute. Therefore, summary judgment is appropriate.

B.     RULE 56(d)

In the alternative, Plaintiffs argue that summary judgment is improper and premature because discovery has not taken place. Though Plaintiffs do not specifically state it, it appears that they are seeking a continuance under Fed.R.Civ.P. 56(d).

---

[20]*Castleglen, Inc.*, 984 F.2d at 1579 (citing *Beighley v. FDIC*, 868 F.2d 776, 783 (5th Cir. 1989) (documents from which an "inference" of an agreement can be drawn do not satisfy § 1823(e)); *FDIC v. O'Neil*, 809 F.2d 350, 353 (7th Cir. 1987) (an agreement "implicit" in record documents but apparent only to one steeped in negotiations does not satisfy the statute)).

[21]*Id.*

[22]*Id.*

Fed.R.Civ.P. 56(d), formerly Rule 56(f), states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."[23]

"A party seeking to defer a ruling on summary judgment under Rule [56(d)] must 'file an affidavit that explain[s] why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts.'"[24] "[T]he nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact."[25] A party may not invoke Rule 56(d) "by simply stating that discovery is incomplete but must 'state with specificity how the additional material will rebut the summary judgment motion.'"[26]

Plaintiffs' argument that summary judgment is improper and premature fails to meet these requirements. Therefore, Plaintiffs' request to stay decision on the Motion until further discovery is completed will be denied.

---

[23] Fed.R.Civ.P. 56(d).

[24]*Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007) (quoting *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)) (alteration in original).

[25]*Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (quotation marks and citation omitted).

[26]*Libertarian Party of N.M.*, 506 F.3d at 1308-09 (quoting *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000)).

## IV.  CONCLUSION

It is therefore

ORDERED that FDIC-R's Motion for Summary Judgment (Docket No. 20) is

GRANTED.

The hearing set for May 16, 2011, is STRICKEN.

DATED   May 3, 2011.

BY THE COURT:

TED STEWART
United States District Judge